# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAYJE MCGONIGLE, | CASE NO. 3:13-cv-02467- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 9, 10, 13, 14 |

## **MEMORANDUM**

### I.      Procedural Background

On October 18, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 132-38). On February 6, 2011, the Bureau of Disability Determination denied this application (Tr. 68-76), and Plaintiff filed a request for a hearing on February 16, 2011.  (Tr. 77-79). On February 9, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 22-67).   On April 27, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 8-21). On June 4, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 5-7), which the Appeals denied on August 23, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-4).

On September 27, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 9, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On February 24, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 13). On March 27, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 14). On June 16, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 17). The matter is now ripe for review.

## II.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.  Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on December 10, 1962 and was classified by the Regulations as a younger individual on the application date and a person closely approaching advanced age on the date of the ALJ decision. (Tr. 17). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and no past relevant work.

(Tr. 22). Plaintiff addresses only her spine impairment in her appeal, and the Court will limit its discussion accordingly.

### A. Function Report and Testimony

On November 3, 2010, Plaintiff submitted a Function Report. (Tr. 158-169). She reported that "all of [her] activities" are restricted due to pain, and that pain interferes with her sleep and her ability to care for her personal needs. (Tr. 159). She indicated that she needed assistance with meals and could not stand for more than ten minutes due to pain. (Tr. 160). She reported problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, and climbing stairs. (Tr. 163).

On February 9, 2012, Plaintiff appeared and testified before the ALJ. (Tr. 22-67). She testified that she was not taking any pain medication because it hurts her stomach. (Tr. 33). She testified that she could not sit or stand for more than ten minutes, and has to sit down every five minutes when she is walking around to shop in stores. (Tr. 36-37). She testified that needs help cooking meals and with her daily activities due to her back pain. (Tr. 37-40).

### B. Medical Records

In August 2000, Plaintiff had a motor vehicle accident and reported neck pain and headaches with tightness of the muscles in her neck (Tr. 193-94, 197, 199, 200, 204, 206 208, 210, 212, 214, 218). On September 7, 2000, MRIs of

Plaintiff's lumbar and cervical spine indicated disc protrusion, but no disc herniation or "mass effect upon the cervical spinal cord." (Tr. 237-39). The vertebral body heights were "well maintained without…compression deformities…No cord compression is identified." (Tr. 237). An EMG/NVC report dated April 3, 2003, shows mild radiculopathy at C5 and C6 bilaterally (Tr. 193, 195). An MRI of Plaintiff's lumbar spine dated February 15, 2006, showed a disc bulge at L3-4 impinging upon the left side of the thecal sac and the left neural for a men (Tr. 229, 268).

Plaintiff began treatment with Dr. V.D. Dhaduk, M.D., in 2003 for severe vascular headaches, progressive cervical radiculopathy, lumbosacral radiculopathy, and complex seizure disorder. (Tr. 193-200). He treated her with nerve block injections. *Id.* On February 5, 2008, Dr. Dhaduk observed diminished sensation , significant muscle guarding in the lower extremities, mild weakness in the lower extremities, significant increase in tenderness in the cervical spine region with spasms of the paraspinal muscles, and  restriction in the range of motion of the cervical spine.  Dr Dhaduk's assessment indicated improvement with the severe vascular headaches, progressive mid and lower cervical radiculopathy, left worse than right and progressively severe lumbosacral radiculopathy with bulging disc disease. (Tr. 210).

On December 28, 2010, state agency physician Dr. Shashank Bhatt performed a consultative examination on Plaintiff. (Tr. 365-68). Dr. Bhatt observed atrophy in Plaintiff's lower extremities. (Tr. 365). Plaintiff had decreased muscle strength. (Tr. 364). Plaintiff "appeared significantly uncomfortable with pain in the neck and back, unable to do most of the examinations, also with seizure disorder with having episodes almost everyday coming in for an evaluation." (Tr. 365). She was scheduled for lumbar spine X-rays and tests to measure the level of seizure medication in her blood. (Tr. 364). X-rays of Plaintiff's lumbar spine indicated that intervertebral disc spacing was normal and "mild… osteophytic lipping of L4." (Tr. 368). Plaintiff's seizure medication was at the therapeutic level. (Tr. 367).

On January 24, 2011, Dr. Louis Bonita, M.D., reviewed Plaintiff's file and issued an opinion. (Tr. 386). He opined that Plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and sit, stand, or walk for up to six hours each out an eight-hour workday. (Tr. 283). He opined that Plaintiff could perform all postural activities occasionally and had no limitations in pushing, pulling, manipulation, vision, or communication. (Tr. 383-85). He explained that "the description of the symptoms and limitations provided by the claimant throughout the record is inconsistent and is not persuasive. Her description of the severity of her pain is extreme and unsupported by the medical and evidence of

record." (Tr. 388). He concluded that Plaintiff's statements were only "partially credible." (Tr. 388).

### C. ALJ Findings

On April 27, 2012, the ALJ issued the decision. (Tr. 18). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 28, 2010. (Tr. 13). At step two, the ALJ found that Plaintiff's "mild cervical and lumbar degenerative disc disease and seizures of unknown etiology" were medically determinable and severe. (Tr. 13). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 14). The ALJ found that Plaintiff had the RFC to:

> [L]ift, carry, push, and pull up to 20 pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand/walk for six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to noise, vibration, and hazards.

(Tr. 15).

A step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 17). At step five, in accordance with the VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 17). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 18).

### V.     Plaintiff Allegations of Error

#### A. The ALJ's Listing assessment

Plaintiff asserts that the ALJ erred in concluding that she did not meet or equal a Listing. A claimant must establish each element of a Listing to meet a Listing. 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies *all of the criteria in the listing*.") (emphasis added). As the Third Circuit has explained:

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley,* 110 S.Ct. at 891 (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

*Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). Thus, if there is one element that is not satisfied, the ALJ will have substantial evidence to conclude that a claimant does not meet a Listing. *Id*.

Plaintiff asserts that she meets Listing 1.04A. Listing 1.04A requires:

> §1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spine arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina or the spinal cord. With:
>
> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raise test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app., Listing 1.04. Defendant responds that Plaintiff has not identified any positive straight-leg raise test, and cannot meet the requirements of the Listing. (Def. Brief at 8-9). Defendant contends that Plaintiff's cervical spine does not meet Listing 1.04A because there is no evidence of nerve root compression. (Def. Brief at 8-9).

Plaintiff asserts that the record shows evidence of "disc herniations," "continued degeneration of her spine," "atrophy," "muscle spasm," "radiculopathies," "decreased sensation," and decreased range of motion. (Pl. Brief at 9). However, Plaintiff does not allege that she has nerve root compression, which is a required element of Listing 1.04A. (Pl. Brief at 8-9). Plaintiff also does not allege that she had any positive straight leg raise tests, which is a required element of Listing 1.04A when there is involvement of the lumbar spine. (Pl. Brief at 8- 9).

The record shows no evidence of nerve root compression. In 2000, the MRIs indicated disc protrusion, but no disc herniation or "mass effect upon the cervical spinal cord." (Tr. 237-39). The vertebral body heights were "well maintained without…compression deformities…No cord compression is identified." (Tr. 237). An MRI of Plaintiff's lumbar spine from 2006 indicates a "disc bulge…impinging upon the left side of the thecal sac and left neural foramen." (Tr. 229). However, Plaintiff also does not allege that she had any positive straight leg raise tests, which

is a required element of Listing 1.04A when there is involvement of the lumbar spine. (Pl. Brief at 8- 9). Thus, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet a Listing. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

### B. The ALJ's credibility assessment

Plaintiff asserts that the ALJ erred in assessing her credibility. When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing 20 C.F.R. § 404.1529(c)). "One strong

indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p. In terms of treatment, SSR 96-7p provides that:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.
>
> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints…

*Id.*

> Here, Plaintiff asserts only that:
>
> Plaintiff presented several pieces of evidence documenting objective pathology in her cervical and lumbar spine. She further has presented medical records that document a long and consistent history of treating for disorders of the cervical spine and of the lumbar spine. The objective evidence thus supports the Plaintiff's complaints of disabling pain in her cervical and lumbar spine. Furthermore, the Plaintiff was examined by a consultative examiner that Social Security hired to examine the Plaintiff. The consultative examiner discover further objective proof. The Plaintiff had various areas of atrophy in her right lower extremity. This atrophy further supports the Plaintiff's contentions.
>
> The Plaintiff's medical documentation may be lacking in the years close to her hearing. This is because she lost her medical providers stopped accepting her medical assistance. Nevertheless, the findings on the consultative examination provide clear and objective proof of a disorder in the Plaintiff's spine that is patently disabling.

(Pl. Brief at 10-11). Thus, Plaintiff asserts that her treatment history and objective evidence support her claims.

Defendant responds that the ALJ properly noted inconsistencies in Plaintiff's claims, such as the conflict between medical records that indicated her seizure disorder was "controlled" and her continued ability to drive with her claim that she experiences seizures "daily." (Def. Brief at 10). Plaintiff does not challenge the ALJ's conclusion that she made inconsistent claims. A "strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p. Thus, the ALJ properly relied on Plaintiff's inconsistent claims to conclude that she was less credible.

The ALJ also noted that Plaintiff "claimant refused to attend a second consultative examination, preventing further development of the record." (Tr. 17). Plaintiff has not challenged this finding by the ALJ, and her refusal to attend a second consultative examination renders her less credible. SSR 96-7p. The ALJ further found that her poor work history renders her less credible. (Tr. 16). Plaintiff has not challenged this finding, and it is a proper basis to reject her credibility. *See Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir.1979) (Work history is a proper consideration in the credibility assessment). Finally, the ALJ relied on Dr. Bonita's medical opinion and conclusion that her "description of the symptoms and limitations provided by the claimant is inconsistent and is not persuasive. Her

description of the severity of her pain is extreme and unsupported by the medical and other evidence of record." Plaintiff has not challenged this finding, and it is a proper basis to reject her credibility. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (ALJ may rely on state agency reviewing consultant to reject claimant's report of disabling symptoms).

A reasonable mind could accept the above-described explanation and evidence as adequate, and Plaintiff has no provided no reason to disturb these conclusions. Substantial evidence supports the ALJ's Listing Assessment. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

## VII.   Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to

support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 31, 2015                                        *s/Gerald B. Cohn*
                                                           GERALD B. COHN
                                                   UNITED STATES MAGISTRATE JUDGE